# EXHIBIT "W"





**LITITZ BOROUGH
POLICE DEPARTMENT**
*"...Dedicated to Professional
Service to the Community that We Serve."*

7 S. Broad Street, Lititz, PA 17543
(717) 626-6393   Emergency: 911

**Chief William R. Seace**

| | SUBJECT: |
|---|---|
| | USE OF FORCE |

| ORDER #: | 18 |
|---|---|

| ISSUE DATE: | EFFECTIVE DATE: | ANNUAL REVIEW DATE: | RESCINDS PREVIOUS ORDER #: | PLEAC: |
|---|---|---|---|---|
| 03/05/2005 | 03/05/2005 | March 05 | N/A | 1.3.1 thru 1.3.10 |

**Purpose:**

The purpose of this regulation is to establish guidelines and procedures governing the use of force and weapons by all officers of the Lititz Borough Police Department.

**Policy:**

It is the policy of the Lititz Borough Police Department to limit the use of force to those situations of absolute necessity. All officers will use only the amount of force they deem reasonable and necessary on any particular occasion. It is a priority of the Lititz Borough Police Department to actively protect life, and secondarily protection of property. The purpose of this directive is to state department policy regarding Lititz Borough Police Officers use of deadly force. To establish policies/guidelines under which the use of force to include deadly force by police officers is permissible. This order is to establish policy and procedures for the use of physical (non-deadly and deadly) force as well as for the carrying and use of weapons including firearms or other possible deadly weapons carried and used by officers of the Lititz Borough Police Department. This order is for departmental use only and does not apply in any criminal or civil proceeding. Lititz Borough Police Department policy shall not be construed to create a higher legal standard of safety or care in an evidentiary sense with respect to third party claims that what is already provided for by State and Federal laws. Violations of this order will only form the basis for Departmental administrative actions. Violations of State and Federal laws might form the basis for civil or criminal sanctions in a recognized judicial setting.

**Procedures:** *(PLEAC 1.3.1, 1.3.2)*

A. Peace Officers (law enforcement officers) as defined in Chapter 5 of the Pennsylvania Crimes Code (18 Pa. C.S.A. ss501) will only use the amount of force necessary and justified, up to and including deadly force, to effect a lawful objective in conformance to the provisions of the Pennsylvania Crimes Code, other Pennsylvania statutory provisions and applicable Pennsylvania and Federal Court decisions. This includes: using force to protect themselves or others effecting a lawful arrest in which case the minimal amount of force will be used, or detaining an individual in custody. Excessive and indiscriminate use of force is prohibited and will be disciplined accordingly. The use of excessive force by a police officer is the ultimate in discourtesy and misconduct. Brutality is the use of force where it is not required. The justifiable use of force where it is authorized under the law in making an arrest, in preventing the escape of a criminal or in protecting the life of the officer or another person is not brutality.

B. It is recognized that Law Enforcement Officers are confronted with situations requiring or resulting in

*(Printed/Revised 01/29/2007 WRS)*

1

LITITZ 00172

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

<u>General Order 18-Use of Force (Continued)</u>

the use of force (or deadly force) to affect a lawful arrest when protecting the public or other persons or officers from bodily, serious bodily injury or death. Only a reasonable and necessary amount of force will be used. The degree of force the officer is forced to use is dependent upon the amount of resistance or threat to safety that the situation produces. Officers must use reasonable means of apprehension and control before resorting to the use of deadly force.

C.  **Deadly Force:** Is defined as **"force that, under the circumstances in which it is used, is readily capable of causing serious bodily injury or death."**

     1.  **Use of Force in law Enforcement:** In making an arrest, police (peace) officer, or any person summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. Officers are justified in the use of any force which he/she believes to be necessary to affect the arrest and of any force which he/she believes to be necessary to defend themselves or others from bodily harm while making the arrest.

     2.  **Deadly Force:** A police officer is justified in using deadly force when he/she believes that such force is necessary to prevent serious bodily injury or death to the officer or to other persons.

AND

     3.  A police officer is justified in using deadly force to prevent a person(s) fleeing from arrest to police custody when the officer believes that no other alternative exists to effect the arrest and has reliable information to believe:

         a.  The person(s) fleeing possess a deadly weapon and the officer believes no other alternative exists to affect the arrest.
         b.  The person fleeing has committed or attempted to commit one of the following crimes.

             (1)  Forcible felony
             (2)  Murder
             (3)  Voluntary manslaughter
             (4)  Rape
             (5)  Robbery
             (6)  Kidnapping
             (7)  Involuntary deviate sexual intercourse
             (8)  Arson
             (9)  Burglary of a private residence, or
             (10) Aggravated assault causing serious bodily injury.

     4.  **Physical force:** Officers may employ needed and reasonable physical force in order to defend themselves, other persons, or to subdue a resisting subject. Officers can take into consideration the immediate measure of defense which is taking that action or using any implement to defend an officer's life or that of another with implements or devises not normally intended to be weapons or issued as public safety equipment or empty hand techniques which would have the capability of causing unconsciousness, serious bodily injury or death. An officer may utilize Immediate Measure of Defense as a last resort when deadly force is justified or authorized.

     5.  **Use of Force to prevent Escape:** Officers or other person who has an arrested person in their custody is justified in the use of such force to prevent the escape of the arrested person(s) as

<b>(Printed/Revised 01/29/2007 WRS)</b>

2

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

General Order 18-Use of Force (Continued)

he/she would be justified in using if he/she were arresting such person.  An officer or guard is justified in the use of force, including Deadly force, which he believes to be necessary to prevent the escape from a correctional institution of a person whom the officer believes to lawfully detained in such institution under sentence for an offense or awaiting trial or commitment for an offense.

6. **Use of force to prevent suicide or commission of a crime:** The use of force upon or towards the person of another is justifiable when the actor believes that such force is immediately necessary to prevent such other person from committing suicide, inflicting serious bodily injury upon himself, committing or consummating the commission of a crime involving or threatening bodily injury, damage or loss of property or a breach of the peace.

7. The use of deadly force is not in any event justifiable under this subsection unless:

    a.  Officer(s) believes that there is substantial risk that the person whom he seeks to prevent from committing a crime will cause death or serious bodily injury to another unless the commission or the consummation of the crime is prevented and that the use of force presents no substantial risk of injury to innocent persons.

    b.  Officer(s) believes that the use of force is necessary to suppress a riot or mutiny after being ordered to disperse and warned (as law requires) that such force will be used if they do not obey.



*(PLEAC 1.3.1, 1.3.6A)*

*(PLEAC 1.3.1)*

*(Printed/Revised 01/29/2007 WRS)*

LITITZ 00174

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

__General Order 18-Use of Force (Continued)__



**Sidearms:**                                                              *(PLEAC 1.3.8A,B&C)*

The Chief of Police, or his designee, shall maintain an official record on each authorized weapon owned by the Department and issued to each officer for official use. The Chief of Police, or his designee, shall also maintain an official record of all personal weapons authorized by the department for official use, and the Chief of Police, or his designee, shall be responsible for updating these records.

   A. While on duty, officers will carry a weapon authorized by the Department, ~~currently the~~ *(PLEAC 1.3.8A&B)* ~~Glock Model 22/40 Cal. or the Glock Model 23/40 Cal., and capable of firing Department issued ammunition, currently 180 grain jacketed hollow point~~. Unless otherwise authorized, that weapon shall be the issued weapon of that officer.

   B. All officers will be required to undergo at least annual firearm qualifications with their issued service weapon, unless excused for just cause by the Chief of Police.

   C. All Department issued or authorized firearms kept away from Department property shall be secured so as to foil accidental discharge, theft, or use by unauthorized persons.

   D. While on off-duty status, officers may carry a concealed off-duty weapon and ammunition. *(PLEAC 1.3.8A,B&C)* The off duty weapon must be of the type and caliber approved by the Department. Approved weapons will be from a .22 caliber up to and no larger then a .45 caliber.

      1. While off duty, officers are not authorized to carry weapons as outlined above under the following conditions; (Unless work related, IE: Undercover status, or working on active investigation(s).

         a. To or from or while attending preplanned social functions that will involve the consumption of any intoxicating substances. Officers who, without preplanning, find themselves in a situation where intoxicating substances are being served should refrain from use of such substances.

         b. While engaged in recreational activity or physical labor that could pose a threat of the weapon being exposed, dropped, accidentally discharged, or prove to be a threat to the officer or other persons or property.

      2. Prior to carrying an off duty weapon, the officer must qualify with that weapon and provide to the Firearm Instructor the make of the weapon, caliber of weapon and serial number of that weapon.

      3. The cost of ammunition to qualify with personally owned weapons would be assumed by the

**(Printed/Revised 01/29/2007 WRS)**

4

LITITZ 00175

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

<u>General Order 18-Use of Force (Continued)</u>

individual officer.

4.  While carrying a firearm off-duty, the Officer will always have on his person the issued Department and or/State identification and badge of authority. All Officers shall take all reasonable care to see that their weapon remains totally concealed while in public, unless it is required for lawful use.

5.  A second weapon can be carried while on patrol duty, which has been specifically approved by the Chief of Police and the officer has qualified and met all Department standards.

<u>Shotguns:</u>

*(PLEAC 1.3.8A&B)*

The Lititz Borough Police Department shall only carry/use the department issued Benelli and/or Winchester shotguns. Ammunition will be department issued 00 buck rounds and slugs.

A.  Due to the wide shot dispersion pattern and its psychological effect, the shotgun will only be used in situations when there exists a possibility that the officer will be dealing with an armed subject. (IE: armed robbery in progress, searching for armed suspects, etc.)

B.  Shift supervisors may approve the use of shotguns on raids and stakeouts when it is believed there exists a threat to human life.

C.  All uniformed officers will have a shotgun in their vehicle prior to assuming active patrol status.

D.  Shotguns will be inspected prior to the beginning of each tour of duty and immediately thereafter to ensure the weapon is workable.

E.  Shotguns will be secured in approved gun racks in the vehicle when on patrol.

F.  Shotguns will be removed from vehicles to be serviced by any non-department personnel or business.

G.  Each officer will be required to qualify with the shotgun at least annually.

H.  Department firearms instructors will develop a shotgun maintenance schedule for cleaning and detailing inspection of each shotgun.

I.  Shotguns will be assigned to each department issued cruiser. The two officers assigned to that vehicle will also be assigned to the shotgun which will be cleaned at least once a month. Any problems or mechanical difficulties should be immediately brought to the firearms instructors' attention.

J.  If the shotgun is used on a call it is the officer carrying the shotgun responsibility to unload and reload the shotgun prior to loading the shotgun back into the cruiser gun rack.  (UNDER NO CIRCUMSTANCES WILL THE SHOTGUN BE UNLOADED BY PUMPING THE ROUNDS THROUGH THE CHAMBER.)

K.  When loading or unloading the shotgun, be sure the weapon is pointed in a safe direction to avoid accidental injury or property damage.

(Printed/Revised 01/29/2007 WRS)

5

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

<u>General Order 18-Use of Force (Continued)</u>

## <u>Police Patrol Rifle:</u>                                                  *(PLEAC 1.3.8A&B)*

A. The Police Patrol Rifle (PPR) may be used to assist officers who respond, or become involved, in an unplanned or spontaneous incident involving a suspect(s) who is wearing protective body armor, or believed to be armed with or has immediate access to firearms, or is believed armed and situated in a distant or fortified position or location, or where the officer has a reasonable expectation that there is a clear potential for an armed suspect encounter. The use of the (PPR) is intended to minimized or prevent the risk of death or serious bodily injury to officers as well as members of the community. (EX: School shootings, bank robberies, etc.)  The PPR is a Colt AR-15 and uses .223 Cal. ammunition.

B. Though deployment of the (PPR) is usually restricted to spontaneous events, the Officer in Charge (OIC) may authorize its deployment on a pre-planned basis for high-risk events or operations.

C. In every case, deployment of the (PPR) shall be in accordance with the general firearms policy, safety rules and procedures and the use of force guidelines and regulations set forth with in this policy.

## Less – than Lethal Weapons                                      *(PLEAC 1.3.4, 1.3.8A)*



* TASER (5.26)
* OC Chemical Spray
* ASP type expandable baton
* Straight baton – either wood or fiberglass
* Hands and feet

## TASER – Handling & Deployment

## PURPOSE



## POLICY:



**(Printed/Revised 03/06/2007 WRS)**

LITITZ 00177

# LITITZ BOROUGH POLICE DEPARTMENT

Policy/Procedure Manual

__General Order 18-Use of Force (Continued)__

Specific objectives of this General Order are:



A. To inform and direct officers who are authorized operators of the Taser, in a uniform and professional manner, the proper tactics and procedures in deploying the Taser.

B. To provide written guidelines for officers to follow when deploying the Taser as well as the documentation required for a Taser deployment.

## INFORMATION



The Taser is an additional police tool and is not intended to replace verbal problem solving skills, self-defense techniques, or firearms. The Taser shall be deployed only in circumstances where it is deemed reasonably necessary to control a subject. The Taser shall be deployed when deadly force does not appear to be justified and/or necessary, and attempts to subdue the subject by other conventional tactics have been, or will likely be, ineffective in the situation at hand, or there is a reasonable expectation that it will be unsafe for officers to approach within contact range of the subject.

## DEFINITIONS



Taser: A Taser includes but is not limited to the M-26 Advanced Taser, the X-26 Taser, and any Department authorized and issued less lethal device which is designed to produce and emit an electrical charge. Personally owned Tasers are not authorized. Lititz Borough police officers will be trained in the use of the X-26.

Deployment: The activation of a Taser resulting in the arcing of the unit, a contact maneuver on a subject or animal, and/or the discharge of an air cartridge whether or not the probes strike their intended target. The arcing display of a Taser is not a deployment.

A. Taser: The accepted word indicating that a person or animal has received an electrical charge from a Taser.

B. Taser Control Manager: A Taser Instructor who has been appointed by the Chief of Police to manage the Department's Taser Program.

C. Taser Instructors: All approved Taser Instructors of the Lititz Borough Police Department.

D. Department: Lititz Borough Police Department – Lancaster County, PA

E. Conventional Tactics: Those tactics and other uses of force described in the Department's Use of Force Policy.

F. Medical Personnel: Includes but is not limited to: Doctors, Physician's Assistants, Nurses, Paramedics and Emergency Medical Technicians.

(Printed/Revised 03/06/2007 WRS)

LITITZ 00178

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

General Order 18-Use of Force (Continued)





**(Printed/Revised 03/06/2007 WRS)**

8

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

General Order 18-Use of Force (Continued)

Subjects who have received an electrical charge from the Taser unit or probes, shall be treated as follows:

A.  Once the subject is safely secured and in custody, the arresting officer shall notify EMS that the subject has received an electrical charge from the Taser and relate the approximate time the action occurred. If the probes penetrate the skin, the puncture sites shall be brought to the attention of medical personnel.

B.  Only medical personnel may remove or direct to be removed any Taser probes that are embedded in soft tissue areas such as the neck, face and groin. Removal from other areas will be at the discretion of the officer who deployed the Taser or the on-scene supervisor..

C.  The officer who deployed the Taser or the on-scene supervisor shall allow medical personnel to determine if the subject should be transported to the hospital.

D.  If the probes are no longer affixed to the subject, and medical personnel determine the subject does not need to be transported to the emergency room/hospital, the subject may be transported to a holding facility for booking procedures.

E.  If the subject is transported to the emergency room/hospital, the transporting officer will obtain a medical release from medical personnel before the subject is transported to any holding facility.

F.  Officers must be aware that one aspect of possible injury to a subject receiving an electrical charge from a Taser is that of falling from a standing position.

The spent air cartridge and probes shall be collected, and the spent air cartridge shall be preserved as evidence. Caution should be exercised in handling probes that have penetrated a subject's skin. Such probes shall be made safe on scene and either placed in a sharps container in the on scene ambulance or upon returning to station shall be put in the sharps container. The probes shall be handled with the same care as a hypodermic needle.

## DOCUMENTATION

The deploying officer is responsible for documenting the deployment of the Taser by completing the Use of Force report, and indicating the Taser use in the narrative section of the initial report, as well as submitting a detailed account of the articulable facts for deploying the Taser each time it is deployed. If the deploying officer is not the primary reporting officer, the deploying officer shall provide a detailed supplement to the case documenting his/her role in the deployment of the Taser.

The officer deploying the Taser shall ensure photographs are taken of the subject receiving an electrical charge from the Taser (contact or probes), with special attention to any area injured and where the charge was received. The officer shall also include detailed documentation in

(Printed/Revised 05/07/2007 WRS)

9

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

__General Order 18-Use of Force (Continued)__





**ASP or straight baton**

*(PLEAC 1.3.8A)*

1. Officers may use an ASP type any time they are on duty if they
   have a current certification or re-certification from a qualified instructor. If the
   Officers does not possess a current certification he/she must use a straight baton.

2. Generally, an officer may need to use the ASP or straight baton in the

*(Printed/Revised 03/06/2007 WRS)*

10

LITITZ 00181

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

General Order 18-Use of Force (Continued)

following circumstances;

    a. To overcome resistance to an arrest
    b. To protect the officer or another person(s) from bodily injury
    c. To prevent a suicide, or an individual from injuring themselves

3. Officers will not strike a subject in any vital area to include the head or neck. Batons will be used to strike a subject's long bones, i.e., arms, legs; or joints, hips, shoulders, or elbows. Batons will not be used to choke, unless the use of deadly force would be justified.

4. Officers are not permitted to strike with a metal or aluminum type flashlight unless the use of deadly force would be justified.

## OC Chemical Sprays

1. Definitions

    a. OC - a chemical agent made from Cayenne Pepper
    b. OC Chemical Spray - any individual protective device that is used for less-than-lethal defense that sprays a chemical compound containing OC

2. Officers are permitted to carry OC Chemical Sprays while they are on *(PLEAC 1.3.8A)* duty to be used lawfully and in accordance with this policy. Officers shall carry only OC Chemical Sprays that are approved by the Department, currently the 5.0% Performance MK-3 canister. Officers shall carry OC Chemical Sprays that DO NOT contain alcohol. It has been shown that sprays that contain alcohol are fire hazards.

3. Generally, an officer may need to use the OC Chemical Spray in the following circumstances;

    a. To overcome resistance to an arrest
    b. To protect the officer or another person(s) from bodily injury
    c. To prevent a suicide, or an individual from injuring themselves

4. Procedure

    a. Spray directly into the subjects face (eyes, mouth, nose). Usually a direct hit at the face will instantly shut the eyes and effect the respiratory system.

    b. Occasionally a panic stricken subjects breathing may be abnormally shallow, preventing deep inhalation of the mist into the lungs even though the subject's eyes are totally closed. In this case immediately create a safe distance between yourself and the subject. Apply a second spray toward the subject's nose and mouth. Stop spraying when the attackers resistance stops.

5. Prohibited Use

(Printed/Revised 01/29/2007 WRS)

11

LITITZ 00182

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

**General Order 18-Use of Force (Continued)**

    a. Once a violent person has been subdued and brought under control there is no justification for use or for the continued use of OC sprays against the subject.

    b. OC Spray will not be used against an individual who merely uses verbal abuse toward an officer.

    c. OC Spray will not be used to elicit information from any person.

6. Storage

    a. Store at room temperature

    b. FLAMMABLE: DO NOT STORE NEAR HEAT OR OPEN FLAME

    c. PROLONGED EXPOSURE TO SUNLIGHT AND TO TEMPERATURES ABOVE 120 DEGREES MAY CAUSE BURSTING OF CANISTER

    d. Prolonged exposure to temperatures below 32 degrees will result in slower discharge

    e. Proper storage is important to maintain the proper aerosol pressure.

**Chemical Agents:**

A. While on duty, officers are permitted to carry and deploy chemical agents and approved and issued for use by the Department, currently the 5.0% Performance MK-3 canister, for defensive purposes. Use of such agents shall be in conformance to all guidelines contained herein.

B. Chemical agents are intended for use in those cases where the officer is attempting to subdue an attacker or forcefully resisting suspect, or under other circumstances, with the rule of law that permits the lawful and necessary use of force and which is best accomplished by the use of a chemical agent.

C. Chemical agents shall not be used indiscriminately or in anticipation against mere threats of violence or resistance.

D. Chemical agents may be applied to the subject even after they have been secured and taken into custody. (EX: Subject continues to resist and attempts to kick or injury officer taking them into custody.)

1. If chemical agents are needed, the following guidelines should be used:

    a. Only chemical agents furnished by the Lititz Borough Police Department in an aerosol type canister unit and operable by depressing a valve on the top of the canister will be used.

    b. The application of chemical agents to subjects shall normally be from a range of five to ten feet. Effective range is 10 to 12 feet in calm air. Application made in distances less then five feet or into the wind may expose the officer to the chemical agents.

    c. Oleoresin Capsicum Spray (O.C. Spray), is unlike mace, and should be used at distances of less than ten feet. The effectiveness increases with close proximity. The O.C. Spray should be sprayed directly into the eyes, mouth and nose of the subject in short bursts. This tool may also

**(Printed/Revised 01/29/2007 WRS)**

12

LITITZ 00183

## LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

<u>General Order 18-Use of Force (Continued)</u>

be used against animals by spraying it into the eyes, nose and mouth areas.

    d.   The agent will NOT be employed in the immediate vicinity of infants, since their respiratory systems are extremely sensitive to all kinds of vapors.

### Post Exposure Cleansing:

Once the chemical agent has been deployed, the following procedures will be adhered to:

A.   Subjects in custody who have been exposed to a chemical agent shall be accorded first aid within (30) thirty minutes from the time of exposure. Applying cool, clear water to the exposed area is considered adequate first aid treatment.

B.   First aid shall be administered at the scene or as close thereto as possible when circumstances permit.

C.   Contact lenses and exposed clothing should be removed.

D.   Flush exposed area with large quantities of cold water or a diluted baking soda solution and expose to fresh air soon as possible. Failure to follow this instruction may result in severe skin irritation, de-pigmentation, or skin injury.

E.   Salves, creams, oils or lotions shall not be applied to the exposed area because they may trap the irritant agent.

F.   In cases where first aid treatment fails to grant relief, the subject should be afforded medical treatment.

G.   All officers shall annually be re-certified in the use of OC spray by a certified instructor.

### Straight/Side Handle Baton (to include expandable batons).

A.   These intermediate defensive weapons may be utilized by officers to defend themselves or other. The primary purpose of these weapons is to provide officers with means of fending off and/or subduing an unarmed assailant.

B.   Officers should not rely on these types of weapons to overcome an armed attack.

C.   Officers may have to rely on these weapons to subdue a violently resisting subject; however, officers must realize that blows delivered to the head with the baton could prove fatal. Blows delivered to other vulnerable areas are often more effective.

D.   All officers will be trained and be able to demonstrate satisfactory skill, proficiency, and if needed proper qualification, prior to carrying or using the baton by a certified instructor. Training should be conducted annually.

E.   Batons shall be carried or stored in an easily accessible location should the officer need it quickly when exiting a patrol vehicle.

### Handcuffs:

A.   All Lititz Borough Police Department personnel will while on duty carry at a minimum one set of

**(Printed/Revised 01/29/2007 WRS)**

13

## LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

<u>General Order 18-Use of Force (Continued)</u>

handcuffs.

B.   All officers are required to maintain and clean their handcuffs to ensure they work smoothly and properly.

C.   Handcuffs should not be used as an impact weapon unless unavoidable to protect the officer from serious bodily injury or death.

D.   Handcuffs should be applied that they are secure and always (DOUBLE LOCKED).

E.   **At no time will an officer be handcuffed to a prisoner.**

F.   The use of neck restraint control techniques is prohibited unless the officer using            *(PLEAC 1.3.10D)* them has been trained by an instructor who has been certified as an instructor in these types of force.

## Weapons Training and Qualifications

A.   Officers of the Lititz Borough Police Dept. are required to pass, at least            *(PLEAC 1.3.9)* once a calendar year, a qualification course with any firearms that they are authorized to carry.  This includes their on-duty sidearm, any specialized weapons and any off duty weapon they carry. To qualify with these weapons the officer must score 75% or higher on the course.

B.   Officers who have not displayed minimal competency with their weapon will **NOT** be            *(PLEAC 1.3.9)* authorized by the Lititz Borough Police Department to carry firearms.

C.   Less-than-lethal weapons qualifications shall be conducted according to the            *(PLEAC 1.3.9, 1.3.10B&C)* manufacturer's specifications or at least every two years. The instructor shall be a certified instructor in the type of weapon being carried and the instructor shall document all training and keep such records in the officer's personnel file. Such records shall include the Officer's name, the date, the time and the type of instruction provided as well as any applicable grading, if any.  If an officer fails to qualify with their less-than-lethal weapons their authority to carry it shall be revoked until they re-qualify.

D.   The qualification course for firearms to be used under subsection A of this section            *(PLEAC 1.3.8C)* shall be one that is recommended by the Firearms Instructor and approved by the Chief of Police.  Officers must obtain a qualifying score of at least 75% to pass the course. The Firearms Instructor shall inspect all firearms used prior to the qualifications course to insure that the firearms are in good working order and safe. The course of instruction for the less-than-lethal weapons shall be taught by a certified instructor trained by an appropriate school for each particular less-than-lethal weapon. The time period for re-qualification with less-than-lethal weapons shall be within the manufacturer's specifications but no more than once a  year. At the time of re-certification the instructor shall inspect the less-than-lethal weapons to insure that they are safe, not corroded or leaking and in good working order.  No less-than-lethal weapon shall be carried that does not pass this inspection.

E.   The Lititz Borough Police Dept. Firearms Instructor shall be trained and            *(PLEAC 1.3.8C, 1.3.10A)* certified as a Range Officers through a recognized course of instruction and taught by certified instructors as determined and approved by the Chief of Police.

(Printed/Revised 07/16/2007 WRS)

14

LITITZ 00185

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

__General Order 18-Use of Force (Continued)__

F.   The Firearms Instructor shall keep a record of all training and of each *(PLEAC 1.3.8D, 1.3.10B)* officer's scores.  Copies of the scores shall be given to the Chief of Police.  When the Department changes duty firearms or an officer changes an off duty firearm the Firearms Instructor shall maintain the records of the old weapons for a period of 5 years.  After this time the records may be expunged.  The instructor for Less-Than-Lethal weapons shall keep the same type of records for these types of weapons.

G.   Any officer who fails to achieve a minimum of 75% on a required qualification course shall *(PLEAC 1.3.10G)* attend additional firearms training within 14 days of their qualification attempt.

1.   Upon completion of such additional instruction, the officer shall re-shoot for qualification under the supervision of a Department Firearm Instructor until the course has been passed.

2.   Consideration will be given to those officers who cannot fire a qualifying score due to a medical/handicap.  If such condition/handicap is permanent, a determination will be made as to whether the officer can continue in an active duty capacity.  If such condition/handicap is temporary a determination will be made as to whether the officer should be removed from active duty or reassigned to duties not requiring carrying of a firearm until recovery and successful completion of the required qualification course.  NOT being able to qualify with the issued weapon after additional instruction is reason for being removed from active duty status until qualification of the course.

H.   In the event of an "Accidental Discharge" of a firearm, a written report shall be prepared as per the Use of Force Report section, subsection D.  The officer involved in the accidental discharge shall be required to undergo immediate re-qualification with his/her weapon prior to returning to full duty.  Should the officer fail to meet the qualification standards the Firearms Officer shall immediately notify the Chief of Police in writing. The Chief of Police shall then revoke the officers authority to carry a firearm and the officer must then follow the procedures as set down in subsection G of this section to re-qualify.

## Discharge Reporting Procedures:

When an officer has discharged a firearm  whether on or off duty, in any and all circumstances other then while actively engaged in legal sporting events of competitive or practice type target firing, or routine training, the officer shall follow the following procedures:

A.   Make a verbal report to the Chief of Police or the Officer in Charge.

B.   Complete and furnish to the Chief of Police or the Officer in Charge a "Use of force report"; containing a detailed report of the incident as soon as possible following the incident.

C.   In the event the officer who has discharged a firearm is fatally injured or is physically or mentally incapacitated and is incapable of submitting the "Use of force report"; the officer's immediate supervisor is responsible for completing the report.

D.   A complete and thorough investigation into the incident will be made as soon as possible following the incident.

E.   *__At no time during the performance of duty shall an officer fire "Warning Shots".__*   *(PLEAC 1.3.3)*

**(Printed/Revised 01/29/2007 WRS)**

15

LITITZ 00186

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

**General Order 18-Use of Force (Continued)**

F.   A rescue shot identifies a location and signals for appropriate assistance. Officers in danger of death or serious bodily injury and incapacitated to the extent they cannot signal in any other manner, may fire a rescue shot.

## Destruction of animals:

A.   An officer may use a firearm to dispatch a dangerous animal or terminate the suffering of a critically injured or sick animal when other means of disposal are impractical

B.   In all cases when shooting of an animal is necessary, the officer will ensure the protection of nearby persons and property.

C.   Officers are required to complete a report when a firearm is used to dispatch an animal.

## Post-Shooting Incident Procedures & Other Deadly Force Incident Procedures:

A.   Handling Officers at Scene of a shooting incident or other deadly force incident:

1.   A supervisor shall be dispatched to the scene of the incident, and shall assume primary responsibility in caring for involved personnel.

2.   The supervisor shall make appropriate arrangements for all necessary medical treatment.

3.   During any period where the involved officer is required to remain on the scene, but has no immediate duties to fulfill, the officer should be taken to a quiet area away from the scene of the incident. A peer counselor, or other supportive friend or officer should remain with the officers, but should be advised not to discuss details of the incident.

4.   The supervisor should arrange for the officers directly involved in the incident to leave the scene as soon as possible, and be taken to a quiet secure setting.

5.   Where possible, the supervisor shall briefly meet with the involved officers.

   a.   No caffeine or other stimulants or depressants should be given to the officers unless administered by medical personnel.

   b.   Only minimal preliminary questions should be asked about the incident. The officers should be advised that a more detailed debriefing would be conducted at a later time.

   c.   Any standard investigations that will occur concerning the incident should be discussed with the officers.

   d.   The officer should be advised that they may seek legal counsel.

   e.   The officers should be advised not to discuss the incident with anyone except a personal or agency attorney, union representative, or departmental investigator, until the conclusion of the preliminary investigation.

**(Printed/Revised 01/29/2007 WRS)**

16

LITITZ 00187

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

General Order 18-Use of Force (Continued)

B.  The supervisor shall determine whether the circumstances of the incident require that the officer's duty weapon be taken for laboratory analysis. Where the duty weapon is taken:

    a.  Take custody of the officer's weapon in a discreet manner: and

    b.  Replace it with another weapon, or advise the officer that it will be returned or replaced at a later time as appropriate.

    c.  Involved officers should notify their families about the incident as soon as possible. Where an officer is unable to do so, an agency official shall personally notify his family and arrange for their transportation to the hospital.

    d.  At all times, when at the scene of the incident, the supervisor should handle the officer and all involved personnel in a manner that acknowledges the stress caused by the incident.

**Rendering Aid After Use of Lethal or Less-Than-Lethal Weapons**                    *(PLEAC 1.3.5)*

A.  It is the duty of all officers to render aid to any person who is injured, is suspected to be injured or alleges to be injured as a result of an officer using lethal or less-than-lethal weapons. Such aid is to be rendered to the injured party until such time as medical assistance arrives on the scene. Officers should keep their own safety in mind while rendering such aid and may restrain the suspect as needed to preserve officer safety. Such aid may be simple observation of the person until assistance arrives or rendering first aid or CPR depending on the injury.

B.  If a firearm or other lethal weapon is used and injury occurs officers shall use whatever means possible to control or stop any bleeding until medical assistance arrives. Officers shall also do whatever they can to keep the injured person calm and still until medical assistance arrives.

C.  If a less-than-lethal weapon is used and an injury occurs officers shall use whatever means possible to control or stop any bleeding until medical assistance arrives. Officers shall also do whatever they can to keep the injured person calm and still until medical assistance arrives.

D.  If OC Sprays are used officers shall use the following procedure;

    1.  Subjects who are sprayed with OC Sprays should be monitored and verbally assured that they are safe and that they will be all right. The subject should be told to calm down (relax) and try to breath normally.

    2.  Subjects who are sprayed with OC Sprays should be removed to uncontaminated air and faced into the wind when possible. They may be allowed to use cool water to rinse the OC Spray from their face. Open their eyes and flush with cool water. If burning persists, place an ice pack on the eyes and affected areas to reduce inflammation. DO NOT RUB. Cool water will allow even quicker recovery from the effects. Keep subject upright, sitting, or laying down. Do not allow them to curl up. This could cause difficulty in breathing.

(Printed/Revised 01/29/2007 WRS)

17

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

3.  If any subject sprayed with OC Sprays is wearing contact lens, they should remove them.  Cleaning affected skin areas with soap and water will expedite recovery since the resin that sticks to the skin will be removed.  The subject, if wet from the OC Spray, should dry before transporting.  This will only take a few minutes and will probably be accomplished before the subject can get into a vehicle.  If the subject is still wet with the OC Spray the transporting officer could become slightly contaminated.

    All symptoms should disappear within 15 to 45 minutes with no after effects.  If symptoms persist beyond the normal 45 minutes full recovery rate period without any relief to eyes, skin and respiratory system, GET MEDICAL ATTENTION PROMPTLY.

E.   Area Decontamination

1.  OC Spray is not a particulate; it is biodegradable and does not require any special decontamination.  Normal ventilation will remove OC Spray from the environment within 45 minutes.  Machine wash all affected clothing.

2.  OC Spray's active agent drifts with the air and will disappear as soon as the enclosed area is ventilated by opening windows and doors.  This is in sharp contrast to other chemical agents which can linger for weeks or months.

## Post Incident Procedures:

A.   Involved personnel shall be removed from line duties pending evaluation, but shall remain available for any necessary administrative investigations.

B.   All officers directly involved in the shooting incident or any incident involving death or serious bodily injury shall be required to contact an agency designated specialist for counseling and evaluation as soon as practical after the incident.  Involved support personnel should also be encouraged to contact such specialist after a shooting incident. After the counseling sessions, the specialist shall advise the department/agency:

1.  Whether it would be in the officer's best interest to be placed on administrative leave and for how long;

2.  Where the officers were relieved of their duty weapon after an incident, at what point they should be returned:

3.  What will be the best continued course of counseling?

C.   Families of the involved officers should be encouraged to take advantage of available counseling services.

D.   Any agency/department investigation of the incident shall be conducted as soon and as quickly as practical.

(Printed/Revised 01/29/2007 WRS)

18

LITITZ 00189

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

**General Order 18-Use of Force (Continued)**

E.  The agency/department should brief other agency/department members concerning the incident so that rumors are kept to a minimum.

F.  All personnel involved in a shooting incident should be advised that they are not permitted to speak with the media about the incident. Officers shall refer inquiries from the media to a designated agency spokesperson, unless otherwise authorized to release a statement pertaining to the incident.
Officers directly involved in the shooting incident shall be required to re-qualify as soon as practical.

**Relief From Field Duty**                                                          *(PLEAC 1.3.7)*

A.  When death or serious bodily injury has resulted from the use of force by an officer, that officer will, as soon as practical, be released from field duty by the supervisor pending a full investigation into the incident.

B.  During the period of time an investigation into the incident is being conducted, the Chief of Police may, at his option, assign the officer involved to administrative duties within the police department or administrative leave. Such relief from duty will not be considered a suspension or disciplinary action taken against the officer but rather an administrative course of action for the purpose of relieving the officer from further performance of field duties while undergoing the extreme emotional stress of having used deadly force, and permitting the police department time to conduct an objective investigation into the incident.

C.  If relieved of duty, the officer must be available at all times and is subject to recall. During this time the officer may be required to resolve any unanswered questions enabling a quick resolution and conclusion to the investigation and review process.

D.  At all times the officer involved will have the right to consult legal counsel and will not be disciplined or otherwise penalized or criticized for seeking such counseling or for heeding the advice of such counsel.

E.  The period of time assigned to administrative duties or administrative leave will be determined by the Chief of Police.

F.  In all cases where any person has sustained serious bodily injury or has been killed as a result of firearm discharge or other force by an officer, the involved officer will be REQUIRED to undergo an emotional debriefing with a department supplied psychologist within five days of the incident. The purpose of this debriefing will be to allow the officer to express his/her feelings and deal with the moral, ethical, and/or psychological after-effects of the incident. The debriefing shall not be related to any departmental investigation of the incident and nothing discussed in the debriefing will be reported to the department. The debriefing session will remain protected by the privileged Professional Psychologist's Code of Ethics.

G.  In all cases where any person has sustained serious bodily injury or has been killed as a result of firearm discharge or other force by a police officer, the involved officer and his family will have available to them the services of a psychologist and/or minister. The purpose of this is to provide the office and/or his family with a source of professional consultation to aid them in dealing with the potential moral and ethical after-effects of a shooting incident. The services shall not be related to any departmental investigation of the incident and nothing discussed will be divulged to the department. The consultations will remain protected by the privileged relationship.

**(Printed/Revised 01/29/2007 WRS)**

19

LITITZ 00190

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

<u>General Order 18-Use of Force (Continued)</u>

<u>Use of Force Reports</u>                                                    *(PLEAC 1.3.6 B&C)*

A.   Officers shall fill out a USE OF FORCE report form anytime an officer uses any type of force or is alleged to have used force, no matter how slight that results in, or is alleged to have resulted in, any injury to another person.  The form is to be filled out for both lethal and less-than-lethal force. The Use of Force form will be filled out anytime an officer points a deadly weapon (handgun, shotgun, rifle) at anybody while on duty.

B.   Use of Force forms will be completed before the officer leaves at the end of his/her shift. If extenuating circumstances, i.e. the officer is injured, then the shift supervisor will complete the form before the end of his/her shift.  If more than one officer is involved and/or officers from another department are involved all involved officers whose actions included the use of force as defined by this Order shall submit a Use of Force form.

C.   Officers will fill in all applicable areas of the Use of Force form and in the narrative section will describe what took place and why the force was used.

D.   Officers shall fill out a Use of Force form anytime that their firearm is discharged.  This    *(PLEAC 1.3.6A)* will include;

1. Firing the weapon at a person whether or not the person is hit.
2. Firing the weapon for the lawful destruction of an injured animal.
3. In the case of an accidental discharge of the weapon

E.   Officers do not have to fill out the Use of Force form for discharging a firearm under the   *(PLEAC 1.3.6A)* following conditions;

1. Firing at an approved range
2. During approved training exercises or situations
3. When discharging a firearm for recreation.

F.   Reporting discharge of firearm;

1. Cases resulting in injury or death;

   a. The Police Radio will be notified immediately from the scene and advised to dispatch medical assistance if needed.  The Shift Supervisor or OIC will immediately respond to the scene and immediately notify or cause to be notified the following;

      - The Chief of Police
      - The On-Duty Supervisor
      - The Duty Criminal Investigator
      - The Lancaster County District Attorney or his
          designated representative
      - The Lancaster County Coroner's Office if needed

   b. The officer who fired the weapon will not make any statement, except to investigating personnel or the Chief of Police, unless otherwise authorized by the Chief of Police or his designated representative.

*(Printed/Revised 01/29/2007 WRS)*

20

LITITZ 00191

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

<u>General Order 18-Use of Force (Continued)</u>

    c.  The first supervisor or command officer at the scene will be responsible for the following;

- securing the scene
- conducting a preliminary field investigation
- taking the involved officer, if not incapacitated, directly to the police station or other designated area
- taking all witnesses, if not incapacitated, to the police station or other designated area and keeping them sequestered in separate quarters pending interview
- ensuring that the involved weapon is immediately seized with ammunition intact and sealed and guarded for prints and ballistics examination as required
- render assistance to the assigned investigators
- submit a detailed report of the results of the investigation to the Chief of Police, the assigned investigators, and members of the District Attorney's Office, if appropriate.

2.  Cases not resulting in injury or death:

    a.  The officer who fired the weapon will immediately notify the Shift Supervisor or OIC. The officer will file a verbal report along with an incident report and a Use of Force report and further provide the Shift Supervisor with the spent shells, which shall be tagged for evidence.

    b.  The Shift Supervisor or OIC will forward a copy of the incident report, the original copy of the Use of Force report along with the spent shell as evidence to the Chief of Police no later than the conclusion of the Shift Supervisor's tour of duty.

## Review of Use of Force Reports

A.  Upon submission of a Use of Force report where a firearm was used or a less-than-lethal weapon resulted in or is alleged to have resulted in injury to a person either on duty or off duty, an investigation into the facts and the circumstances surrounding the incident will be conducted by an officer to be designated by the Chief of Police. The findings of this investigation will then be turned over to the Chief of Police for his review. This does not apply to firearms and weapons training, hunting, or participation in legitimate sporting events. All Use of Force reports will be stored in a separate file.

The Department will respect the rights of the Federal Government to conduct an independent investigation to identify any civil rights violations which may have occurred. If there should be a federal investigation, the Department will not order or request any of its members who may be suspects to confer with federal investigators without the advise of counsel. The investigation report will be reviewed by the Chief of Police for recommendations regarding the Use of Force Incidents. If it is determined by the Chief of Police that the Use of Force incident is not within policy guidelines then the Chief of Police shall initiate the appropriate retraining, disciplinary action, and/or criminal action.

## DEFINITIONS:

1.  Bodily Injury: Impairment of physical condition or substantial pain.

2.  Deadly Weapon: Any firearm, whether loaded or unloaded, or any device designed as a weapon capable

**(Printed/Revised 01/29/2007 WRS)**

21

LITITZ 00192

LITITZ BOROUGH POLICE DEPARTMENT

Policy Procedure Manual

General Order 3: Use of Force (Continued)

of producing death or serious bodily injury.

3. Serious Bodily Injury: Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

4. Chief of Police:  Head of Police Agency.

5. Designee:  Assigned by the Chief of Police to act on his behalf in the absence of the Chief of Police.

6. PPR:  Police Patrol Rifle.

7. Chemical Agents:  OC Spray/Mace.

By order of:


William R. Seace
Chief of Police

Distribution:      All Officers

LITITZ 00193

# LITITZ BOROUGH POLICE DEPARTMENT

### Policy/Procedure Manual

General Order 18-Use of Force (Continued)

## ACKNOWLEGEMENT OF RECEIPT AND UNDERSTANDING
## OF GENERAL ORDERS

**General Order:  18 Use of Force**

On this date I have received a copy of the above listed General Order(s).  This General Order(s) is/are either a new Order(s) or a revision of an existing one.  My signature next to my name certifies that I have read the General Order(s) and I understand the contents of it/them.  I further understand that it is my responsibility to place the General Order(s) in my copy of the Lititz Borough Police Dept. Policy and Procedure Manual for future reference.

| Officer | Signature | Date |
|---|---|---|
| Sergeant Kerry Nye | | Date |
| Sergeant Kerry Good | | Date |
| Officer Joel Hartz | | Date |
| Detective John Schofield | | Date |
| Officer Karl Spidel | | Date |
| Officer Chris Kelley | | Date |
| Officer Chris Armato | | Date |
| Officer Ken Wolfe | | Date |
| Officer Peter J. Savage | | Date |
| Officer Steve Detz | | Date |
| Officer Jared Hahn | | Date |
| Officer Jevon Miller | | Date |

(Printed/Revised 01/29/2007 WRS)

LITITZ 00194